Case 23-1737 GoldenTree Asset Management LP v. Financial Oversight and Management Board for Puerto Rico, et al. At this time, would counsel for the appellant introduce themselves on the record to begin? Good morning, Your Honors. Judge Gatta, Judge Thompson, Judge Rickleman. May it please the Court, my name is Thomas Loria. I'm with White & Case. We represent GoldenTree Asset Management, who holds or manages funds that hold Orthra's wholly-owned subsidiary, Sincora, insurers over $1 billion of PREPA's $8.2 billion of outstanding revenue bonds. Your Honor, I will be arguing for the appellants, subject only to any direct questions that the Court may have for the trustee, which will be addressed by the Trustees' Council. If it pleases the Court, I would like to reserve three minutes for rebuttal. Yes, you may. Thank you. This appeal presents a very simple question. Did the Court below err in staying our motion for relief from the stay to seek appointment of a receiver without notice or hearing? Our appeal turns on an unambiguous statutory provision and can be decided on undisputed facts. It is undisputed that PREPA has breached its obligations to the bonds. It is also undisputed that Section 17 of the Authority Act grants the bonds the unique and special right to seek a receiver to protect their right to repayment by seeking a receiver to take possession of PREPA's revenues. Given Judge Swain's decision in the adversary position, has your argument changed at all? Is your argument impacted at all by her hearing on the merits? No, Your Honor. While we disagree with those rulings and are appealing them, our motion to lift stay does not turn on and is not affected by rulings that the Court below made before our lift stay motion or after our lift stay motion. If stay is lifted, then what is left after the adversarial proceedings decision? Well, Judge Swain has made no determination regarding the rights between various creditors of PREPA as to who has priority. And we believe that the receivership right gives us the opportunity to seek priority versus the estate's other unsecured creditors. So our rights do not turn on saying that we have a lien. They're not in any way attached to lien rights. Our rights are simply to go to a receiver and seek to enforce what we believe is statutory priority as between creditors. And did you argue that to Judge Swain? That issue was never brought to Judge Swain, and she issued her order staying our motion indefinitely before we had an opportunity to join issue. And it was not contained in any of your paperwork to her, though? We said that we needed adequate protection of a right to a receiver. But not specifically in order to get priority over any other non-secured creditors? Well, we would have ordinarily waited to get a response from the opponents and then responded on that issue in a reply brief. We obviously were deprived of that opportunity. Here's what I understand one of the arguments that the other side is making here, which is you came in, you asked for relief from the automatic stay so that you could get a receiver appointed by another court. And then discussion ensued, and everybody agreed that would be putting the cart before the horse. Other things should be resolved first. And so a schedule was set up, and it seems like everybody, most pertinently your client, was on board with that. And then time goes by, and instead of going back and asking for a modification of that schedule or asking for a change in that, you just filed again a motion for relief so that you could get a receiver appointed. That characterizes the argument. Sorry, I didn't mean to interrupt. Well, if that's the sequence, why would we allow that sort of – why would we want to encourage people if they have a problem with an agreed-upon schedule to try to unilaterally get around it like this? Well, Your Honor, let's talk about the prior stay and the argument of waiver. We'll go straight to that. There was an order entered on September 29th. Well, not necessarily waiver, but why isn't that just effective case management that you shouldn't be allowed to skirt once you entered into an agreement that this was an orderly way to proceed? I would refer the Court to 1537, paragraph 5, which is the Court's order on September 29th, 2022. That order specifically at paragraph 5 only applies to the matters then before the Court. It makes no reference to any subsequent litigation or motions or actions that the parties may take. Yes, but counsel, isn't what happened here is you got this summary judgment ruling and you were unhappy with it and you wanted to appeal it immediately and the judge said that wouldn't be appropriate and then the subsequent lift-stay motion was filed? So isn't this just a way to get a faster appeal than through the ordinary schedule that you'd already agreed to? No, Your Honor, it's not. Why not? The lift-stay motion was actually principally brought on. The one that's currently on appeal was brought on because the Court below had determined that we did not have a secured claim beyond the funds that were in the sinking fund accounts, about $19 million or 0.2% of the $8 billion owed, and that the value of the revenue stream, which we're permitted to look to for payment, had a present value of $2.388 billion, which is substantially less than the $8 billion we're owed. So we believe we have this right to a receiver that allows us to establish priority vis-à-vis other creditors who are trying to eat into that $2.388 billion. And that's a fund that, by virtue of that determination, that limiting determination, which didn't exist when the prior litigation had occurred, that's a fund that's being wasted. It's shrinking every day that dollars leave the estate. It could be subordinate to pay creditors that could be subordinated to the bonds. The availability of money for the bonds is shrinking. So that is classic adequate protection. That sounds like what you're saying is that we agreed to this schedule. We agreed to what the trigger was in the schedule. Time goes by, another ruling comes down, and we see, well, maybe that wasn't such a good schedule. Maybe our interests require us to move more quickly. So the natural thing to do is then go back and ask for the schedule to be modified that you had agreed to. And it seems like you intentionally did not do that. You came up with a theory that if we filed this motion, that can force the court's hand. Your Honor, this notion that there was an agreed-to schedule is just not correct, and it's not supported by the record. We had filed papers on September 19th asking for a schedule, and we had filed papers on September 19th volunteering to waive our right to a 362e hearing because we wanted to join that motion with a motion to dismiss the case, and we didn't want people to think we were prejudicing their right to fully litigate the dismissal motion by holding everybody's feet to the fire on the 30 days. None of that was agreed to. We proposed that a plan be filed on November 1st and that there be a confirmation. The plan be confirmed by May 1st the following year. That schedule was not adopted by the court, and our offer to waive the right under 362e was not granted. The court entered an order on the 29th that specifically just stayed everything. So the idea that there was some agreed schedule or the relief on the 29th was agreed to is just not correct and not supported by the record. But in any complex litigation, it's very frequent that parties may say, we want this for a schedule, and the other party says, well, we want that for a schedule. They have some common elements. They have some uncommon elements. The court then sets a schedule, so it's the one neither party has agreed to. But if you at that point think there's a problem with it, you need to object to the schedule. Your Honor. Sorry. Was there any objection by your client to that schedule after it was handed down? There was not, Your Honor. So that's the problem I think you have. Well, Your Honor, I'm sure as the court knows, lift-stay motions can be filed seriatim. That's common practice in bankruptcy. It's widely recognized. I think Chattagay is probably one of the best and most frequently cited cases on this point. But as circumstances change, a party who has rights that it believes need to be protected for cause has the right to come back in and ask for stay relief. But what is the new circumstance here other than you got a ruling from the court that you didn't like, which you will be able to appeal in due course? It is a ruling that we didn't like, but the ruling changed the nature of our rights. If you look at the receivership right under Section 17 of the Authority Act, it can be used as a vehicle to enforce a secured claim, but it's also a standalone right to establish creditor priority. And the importance of this is distinguished from any ordinary contract right. Whereas a contract only binds the parties to the contract, the law binds everybody. But, counsel, aren't all those issues issues that are in the adversary proceeding, which has now been decided, it's your position they're not? Not at all. How is that? Can you explain that? The only issue that comes out of the decisions is that the fund that we can look to for payment has now been set in an amount that's grossly less than what we're owed. And so as days pass and we can't exercise our receivership right to establish priority, the fund shrinks and will go to zero. That is the classic stuff of adequate protection. But, counsel, in the decision that just came out, your arguments about what the Enabling Act means were considered. The court disagreed with you, didn't think that your interpretation was correct, that it's just an Enabling Act, it doesn't require any action in particular. The arguments that you're raising were rejected by the court, and as Judge Kayada was asking, there was a schedule set so that all of the issues could be determined in an orderly fashion. So I'm not sure why the fact that you lost on some of those issues creates a new circumstance justifying a new lift-stay motion. Your Honor, none of the other litigation addressed the issue of creditor priority under the Authority Act as a consequence of the appointment of a receiver. That issue was not raised by any of the parties, it was not litigated by any of the parties, and it was not decided by the court below. So then maybe this is premature, because it seems that creditor priority would be an important issue for your client. But it's not contained in the issues before us now. Well, we're arguing about the merits, and as this court knows, and as my opponents know, this is not a court of first impression. We think the simple issue before the court is, did the court violate Section 362e by making rulings without notice in a hearing? And there are only two cases that we're familiar with that have determined that that's an immediately appealable order, Looney in the Fourth Circuit and Forstine in the Northern District of Illinois. And both of those cases hold that that act violates 362e. 362e is designed to prevent an injunction by continuance. This is something that Congress was expressly concerned about, that property rights could be deprived, delay of the law can be denial of the law, and specifically foreclosed courts from doing what the court below did. The things that we're arguing about right now— because it's immediately appealable. And then we still move on to, well, did the district court abuse its discretion? If we're not inclined to rule favorably for you on that front, then what do you do? Well, the court doesn't have any discretion. 362e is clear— Well, I understand that's your position. Of course, the other side takes a very different position, so we've got to come out one way or the other. It's for this court to decide. But 362e on its face doesn't provide this discretion. And 102, which talks about whether or not you actually have to have a notice or a hearing, doesn't apply to our facts here. There were no exigencies that required the court to skip over having a hearing where we could have argued about these issues in the applicability of the prior order. And we certainly didn't waive our right— Humor me, if you will. If we disagree with you that the court didn't abuse its discretion, are you foreclosed from arguing this in an appeal, particularly given what Judge Rankleman just said is part of the court's decision-making? How are you precluded from arguing this and fleshing it out in an appeal from the adversarial ruling? None of these issues were— But I thought—and again, you would know the record better, but I thought the court has ruled or come close to ruling that the undertakings, the promises made in the bonds as to what would be done in the future are dischargeable. They are dischargeable. I think they may be. I want to reserve my rights on that. They may be dischargeable, but that really doesn't have anything to do with our rights vis-à-vis non-debtor other creditors. The issue of whether or not the debtor can obtain a release from our receivership rights for the benefit of other creditors has not been argued to the court and is not something that's ripe for decision anywhere at this point. We do have a right under Article 17, and other creditors can appear if the court were to determine that the stay is terminated. We'll go to the receivership court, and people can argue what the powers of the receiver are, but we think it's clear that the statute gives us the right to obtain priority in payment over other unsecured creditors, not relying on a lien right in any way, shape, form, or fashion. And none of that has been raised in the adversary, and it would only have been teed up in our lift-stay motion, but we were denied the opportunity by the court below to argue about these issues. Could you take me back to your point regarding seriatim motions for relief from stay? Clearly, a creditor could waive their rights under the statute, I would think. In fact, you offered to do so on one occasion. The cases on waiver all involve and require, and in fact this court has so held, a clear, present intention to waive a known right. And the cases that get cited talk about situations where, after somebody files a motion to lift stay, they agree to a litigation timeline that goes out after the 30 days, or they agree to discovery that requires responses out after the 30 days, a present manifestation of an intent to waive. Let me just explore what you mean by that, how far you want us to take that. You file a motion for relief from stay. The next day, the court calls everyone in and says, I know the statute says 30 days, but I think we've got other things to do in this case, so I'm going to issue an order that will not do this in 30 days, will take 120 days. And everybody says nothing. No one objects to that. What would you then have us make of that? Would you say, ha-ha, we caught the judge by just sitting silently, or would you say, well, by not objecting, everybody effectively agreed to 120 days? Well, the motion that we filed on August 24th, which is the one before the court, specifically referenced the motion. But I'm asking not about that motion. I'm asking about the example I just gave you. Well, we're not litigating by ha-ha here, and I don't think we'd be litigating by ha-ha under the circumstances that the court has just described. So are you saying in that situation there would be no automatic granting of the stay? There's a problem with what the court described. If there's a preliminary hearing, at that hearing, the court can determine that it needs to have a final hearing, but that final hearing has to be only 30 days after the preliminary hearing. Right. My hypothetical involved no preliminary hearing, involved the court just telling the parties that for scheduling purposes, I think this should take 120 days to be better for everybody, and nobody objects. What would we make of that? Well, Your Honor, we do object to the order that was entered in this case. That's why we're appealing. We asked for relief under 362E. The court referenced 362E in its order, and we immediately appealed because of the urgency of the situation. There was no sneak attack here. Our motion was under 362E. The court knew it. You can look at the order. And as soon as we got it, the order was issued on Friday. We appealed on Monday. Counsel, let me ask you this because it seems to me what you're arguing is you were entitled to file a new lift-stay motion. There was a new circumstance. You think the arguments that you were going to make, that you didn't get to fully air, weren't made before. The court, however, specifically found that your motion, and I'm on addendum 2, page 2, that your motion is substantially duplicative of the previous motion to dismiss the Title III case or to lift the stay and appoint a receiver filed previously. So the court here found that there wasn't a new issue raised in your motion. I know you disagree with that, but just for a moment, if the court were correct, do you agree that it didn't need to hold another hearing at that point? The court could only make that determination at a hearing on our motion. We would have had the opportunity to join issue if it's agreed. Why? Doesn't the code say very clearly that the court gets to decide what kind of hearing, what kind of notice, and what opportunity for a hearing is appropriate in the particular circumstance, and here the court found that your motion was raising duplicative issues that had already been raised and were being litigated? Well, that's a merits defense to the motion. The statute, the words of Congress are, and I paraphrase, 30 days after a request for relief from the stay of an act against property of the estate, such stay is terminated by Congress unless the court, after notice and hearing, orders such stay continued in effect pending the conclusion of or as a result of a final hearing. So could you file one every 30 days ad infinitum and require the court to hold a hearing, the exact same motion over and over and over again, and you're saying we should read the statute as saying the court could do nothing but hold hearings after one another on and on and on? Well, Your Honor, this motion was filed almost a year after the prior motion and the prior order, so there was none of that, and under the facts proposed by the court, at some point I think the court can say I'm holding the hearing, and at that hearing the court's going to say this is sanctionable. It's a frivolous motion either under Rule 11 or 1927. There's going to be a price to be paid for this. So the court does have the power to manage that type of abusive situation. This is not that. This is not that. Our new motion was filed almost a year after the prior motion. The order that was referred to clearly does not apply to a subsequent motion, only applied to the two motions that were before the court at that time a year ago, now over a year ago, and is based on a completely different theory that was not raised in the prior motion. Remember, the prior motion, which was filed in September of 2022, was focused on the timeline. It said this case has gone on too long. Without a resolution, you should dismiss it, and if you don't dismiss it, you should lift the stay so that we can exercise our non-bankruptcy remedies. That's not the current motion, and it's not even close to the current motion. The current motion is that because the fund that is available to pay us, should we get a receiver, has been determined by the court to be much less than we're owed, the passage of time will result in the reduction in the value of our right to get a receiver. And so it is an urgent matter, and it's getting small. Our remedy is getting worth less every day. The stay prevents us from exercising it. I have a question that I'm going to ask the other side too, which is the recent order that just came down from Judge Swain. If you were to assume without conceding that we were to hold you to the schedule that Judge Swain had previously handed down, how would you view this new ruling under that schedule? Would you view it as now triggering consideration of your third motion or a new motion? Because it represents a resolution of the adversary proceeding. In that the adversary has now been fully resolved, we've appealed from that ruling. And to be clear, we take great issue with the determination of our lien rights, and the estimation of our $8 billion claim is only 2.3. So that's under appeal, and we'll be coming up to this court in due course. I think I anticipate a motion to expedite the appellate schedule with respect to all that in the very near future. But the schedule that was contemplated by the order back in September has long since passed. In fact, the debtor didn't file a plan when the court ordered it. So the deadline passed without a filing. The deadline passed, and we reserved our rights. As that deadline kept pushing back, we reserved our rights. So I don't think there's any argument to be made that we don't have the right to seek relief from the stay now. So why haven't you argued that to Judge Swain, that under the schedule, yes, not only are you not getting around the schedule, the schedule now allows you to do something? Your Honor, we didn't think we needed to file a motion to lift stay to file a motion to lift stay. And if parties objected to our request for relief from the stay, the court could have set a hearing, could have been telephonic, and said, hey, I'm concerned that this is picked up by my prior order, and the parties would have argued that issue, and we would have gotten a resolution. We would have had the opportunity to present evidence. We would have had the opportunity to make all of our legal arguments. And Judge Swain could have made a decision at that preliminary hearing regarding the applicability of the prior stay order or the argument that we've waived. We were deprived of that right, and the clock, the 30-day clock, has long since stopped ticking. We're now over 90 days past the filing of our lift stay motion on August 24th. Further questions? Thank you. Thank you. Thank you, Counsel. At this time, if Counsel for the Financial Oversight Management Board would introduce himself on the record to begin. Thank you. Good morning. My name is Martin Bedenstock. I'm at the law firm Proskauer Rose, LLP. It's attorneys for the Financial Oversight Management Board of Puerto Rico, and it's debt restructuring case under Title III of PROMISA. Subject to Your Honor's questions, I had planned two brief statements on the two central issues of the jurisdictional scheduling issue and 362E1, after which I would get into more detail. But plans are plans. I would first like to respond very briefly to what I just heard. This is the first I've ever heard of a claim for priority this morning, not even in the appellate briefs. That was very odd. Well, it's very odd, and I'm about to explain why. In Judge Swain's decision of last week and in Bankruptcy 101, it is explained that every jurisdiction in America has laws enforcing the payment of valid debt. Appellants this morning raised the Authority Act in Puerto Rico. Yeah, that's one of those laws. There are a lot of other laws and jurisprudence. If you have a valid debt in America, you get to enforce it. The notion that bankruptcy does not preempt that law and instead gives creditors a benefit of priority for enforcing it is against everything every bankruptcy decision has stood for for the last 200 years. I don't want to use adjectives, but if preemption doesn't apply to that, then there can be no bankruptcy law. You can't restructure debts if outside-of-bankruptcy local laws can be enforced. It's that simple. As for the impact of Judge Swain's decision last week, I agree with— Wait a minute. Yes? Are you saying that his—I mean, I understand his argument to be that if he's forced to be in a class of unsecured creditors, that he still has a right to get priority status within that class? That's what he said this morning. Right. And so are you saying that even if he just brought it up today, that that's not true? I mean, are you disputing that? I'm saying it's against black-letter bankruptcy law. Generally, you don't discriminate against creditors. Is that what you're referring to? Well, that's certainly one proposition. But remember, all the other unsecured claimholders in the PREPA case also have laws in Puerto Rico and the United States that allow them to enforce their claims. Why don't those laws give them priority over the bondholders? The answer is all those laws are preempted by PROMISA and the Bankruptcy Code. And Judge Swain actually had occasion to talk about that in the decision she rendered last week. As far as the impact of her decision, I agree with GoldenTree on one issue. It does now make the resolution of the adversary proceeding final and therefore appealable, and the notices of appeal have already been filed. And I think there will probably even be a motion to expedite the appeal. And how do you view that in relationship to the expiration of the delay built into the schedule? In other words, have we now had the trigger for proceeding forward with a motion for relief from the stack? Although counsel may not agree to this or appreciate it, the fact is Judge Swain did them a favor, and I'll explain why. This circuit has a decision called GRELLA, G-R-E-L-L-A. The GRELLA decision is not cited by either party. I'm happy to submit a 28-J letter. But the GRELLA decision provides that stay hearings are summary. They do not give rise to res judicata or collateral estoppel. They're not final rulings on the merits. What Judge Swain did was actually benefited appellants, but it also benefited everyone else in the case. She entertained an adversary proceeding with all the bells and whistles and the federal rules of civil procedure. She resolved the key issues on summary judgment and then a motion to dismiss the counterclaims. That is final res judicata collateral estoppel if affirmed on appeal. Now they have something they can appeal, and the final answers to those questions can be resolved. So if they had proceeded just at the stay hearing, whatever decisions Judge Swain would have made on those key merits issues, whether it be priority, security, recourse, your honors are going to hear them all in relatively short order. Whatever decision she would have made would not be appealable because of the GRELLA decision. So Judge Swain actually acted as perfectly as a trial court can act in this situation. Counsel, if I can just go back to Judge Kayada's question to you. Isn't the answer that Judge Swain said in her order responding to the lift stay motion, she specifically said at the very end of that order that upon resolution of the motion to dismiss, which is now resolved, the court will determine the next appropriate steps for consideration of any unresolved issues? In other words, right now they could go back to her and say this is what you said in response to our lift stay motion. Absolutely. I would add that Judge Swain also in that order provided for a schedule for confirmation, which is now scheduled to be tried the first two weeks of this coming March in 2024. And at an omnibus hearing at their prior stay motion, the one that was filed in September 2022, Judge Swain at supplemental appendix page 555, and I apologize, it's cited in our brief as supplemental appendix page 55, but it's really 555 that has the transcript of that omnibus hearing. Judge Swain explained that she was staying the stay motion precisely because it made no sense to her to let bondholders with questionable rights derail a potential confirmation and restructuring of the entire case. So it will not be surprising, and in fact my client will certainly urge for the court to go forward with the confirmation hearing without any further delay. Whether the judge wants to do something before or after that on the stay motion is obviously up to Judge Swain. We'll take a position when that's put in front of us. Can I ask you another question again? It seemed that your opposing counsel was really arguing he raised a new issue. You say the issue is extremely new. It was just raised for the first time this morning. But because he raised a new issue in this lift stay motion that's on appeal before us today, that there should have at least been a hearing before Judge Swain could conclude that in her view there weren't new issues, it was substantially duplicative of what happened before. What is your position on that? Do you think the statute, the code required her to hold a hearing before she could conclude that the issues that were raised were substantially duplicative? In fact, the cases that Golden Tree cites, whether it be Looney, well, Looney was a Fourth Circuit case with a serial violator of 362E, but the other cases, the one about the sports franchise, Northwest 15th Street, and foreseen where there was an argument over who owned the architectural plans for development, they all mentioned that you could, if the facts are not in dispute, you don't need a hearing. And 102.1 provides for an appropriate hearing. But this was going to be my major point about that. They argued they didn't get a hearing. The fact is that they had a hearing on the key issues before they filed their motion. The summary judgment that Judge Swain issued provided, number one, they have no lien against current or future revenues. Number two, they have no lien that the receivership remedy is not property of the debtor. And that's just so obvious and logical. It's how can it be otherwise? How can a debtor own a creditor's remedy? It can't be. And she decided that. So in terms of invoking 362E1, they were dead from the start because to invoke 362E1, it's not enough for them to say we have a property interest in our remedy. Of course, we all have property interests in our legal rights. But 362E1 provides that the act has to be against property of the estate, and promesa defines of the estate to mean of the debtor. So they had to show that the receivership remedy was not only their property but was property of PREPA, and Judge Swain had ruled on summary judgment, no, of course it's not. The debtor doesn't have an interest in its creditor's remedies. So their rejoinder to that is in their brief they say, but wait a minute. They say once the receiver is appointed, the receiver is going to go after all of the monies, all of the revenues of PREPA. So we were asking for stay relief to go against property of PREPA. And our response to that is bridge too far proves too much. Why? Let's look at where the bridge takes us. Every unsecured claim holder could ask for permission, stay relief, to get a judgment on its claim. And when you have a judgment, you can then attach PREPA's revenues. So what GoldenTree is saying is all creditors have rights to 30-day hearings because anyone who asks for a judgment will then go after PREPA's money just like the receiver will try to collect PREPA's money and raise the rates and do these other things. Proves too much. 362E1 is very narrow. Generally, the classic application of it is to apply to a secured claim. The other application is occasionally it applies to property in which the debtor and another party have disputing or competing interests. But it's never been applied to a situation here where Judge Wayne's summary judgment decision said they have an unsecured claim, not a secured claim. No unsecured claim holder has ever been able to invoke 362E, and they haven't cited a case because it doesn't exist and it would be contrary to the statute and the legislative history. So are you saying the 30-day statutory requirement doesn't apply to a motion if the motion is without basis? Well, it doesn't apply to the motion if the motion is not against property of the debtor. And what I'm saying here is before they have- And tie that into the statutory language. Where are you saying- In the first sentence of 362- May I? Yes, please continue. In the first sentence of 362E1, Your Honor, it provides that- 362E1 provides a request, quote, for relief from the state of any act against property of the estate. End quote. It's governed by that section. As I mentioned, PROMESA section 301C5 provides an entitled three cases. Under PROMESA, property of the estate means property of the debtor. Here are PREPA. So the simple question is whether a felon has requested state relief for an act against property of PREPA. And what I was just trying to explain is asking for a receiver is not asking for property of PREPA. PREPA doesn't own the receiver. The fact that the receiver's next step will be to try to receive PREPA's revenues is no different than any unsecured claim holder who gets a judgment whose next step is to attach the debtor borrower's property or revenue. So stay with the language of the statute for a moment. Let's assume we have a situation where someone files a 362E motion for relief from the state to act against property X. And let's assume that there's a contention that property X is not property of the debtor. Then are you saying that the proper way to handle that is just you don't have to rule in the motion as opposed to the proper way to handle it being you do have to hold the hearing within 30 days, but at that hearing the request will be denied because it's not property of the debtor? And my response, Your Honor, Judge Kayada, is outside of the facts in this case, I'm not saying that. I'm saying if that were to occur, there would be a hearing where the debtor would say, wait a minute, this is not property of the debtor, 30 days doesn't apply. The reason I'm saying that that response does not apply here is Judge Swain had already issued a ruling on summary judgment saying that the receiver remedy is not property of PREPA. And Golden Tree was part of that. The appellants here were parties in the adversary proceeding. They had more than a stay hearing. That was my point at the very beginning. They didn't just have a gorilla hearing, a summary hearing with no final rulings, no rescue to come. They had a full-flung soup to nuts federal rule of civil procedure trial summary judgment. I think you're saying that, in fact, if it's not property of the debtor, the rule 32E, 30 days, doesn't even start running as long as the conclusion that it's not property of the debtor is driven by the res judicata application for prior proceeding to that court. Well, I'm saying as long as the court had considered that issue and issued a ruling. For instance. That there was already a hearing. Right. On that issue. And it was decided against them. If there had not been an adversary, I agree, Your Honor. If there had not been an adversary proceeding where Judge Swain had considered that, then she would have had to consider it at the stay hearing where they would say they have a 30-day right and the debtor would say you don't because it's not property of the debtor. So you're distinguishing a loser argument is not enough to get rid of the 32, 362E. You mean a ruling. But a particular type of loser argument is enough to get rid of it, and that's the one that's based on a prior ruling in that same case. Right. With the same parties. Kind of like a law of the case argument. Right. Well, they say they didn't get a hearing. They had sent her to the stay hearing. They had an adversary proceeding. They were parties. They're going to appeal. So it's, in essence, a substitute for a 30-day hearing. It acts as a substitute hearing for a 30-day hearing. Well, if a 30-day is applied in the first place, yes, it would. It was more than a perfect substitute. They got more than they were entitled to. Because it was a full adversary proceeding. Do you disagree with their assertion that the rights that they wish to continue to pursue cannot be pursued through an appeal of the adversary proceeding? Okay. From our point of view, the appeal of the adversary proceeding gives them everything they want. They claim that, wait a minute, they were entitled to a 30-day hearing. You can't replace the 30 days it ran. As an aside, they did appeal before the 30 days ran and took jurisdiction out of the trial court, so that's what they're saying really isn't right. And they're also saying that they can't be compensated for loss of the 30-day hearing. And we're saying, for crying out loud, if you got delayed in getting money, interest is a remedy. There's nothing that can't be compensated. There are a lot of big issues in Puerto Rico, but this is a money issue. They're suggesting it's not just interest. They're saying money that would have been poured into the account that is the secured account isn't getting poured into it and a receiver would pour it into it. And, Your Honor, it's easy for them to say that, but since PREPA is living hand-to-mouth, are we really going to turn off electricity in Puerto Rico and give the money to them? I mean, that's not serious. But they have, I guess, the benefit of being able to say what they want. There's a lot more to it than, oh, they'll just take the money. And Judge Swain had a part of what is now being appealed to the First Circuit is Judge Swain's ruling on their unsecured claim where she listened to what rates could be and what could be collected, and her decision explains, first of all, you can't raise rates in Puerto Rico without the approval of an entity called PREP. It's a regulatory body on rates. And their concern is not just creditors. Their concern is the people of Puerto Rico keeping a sustainable economy. It's long and complicated, but it's very complex. It's not just a matter of give us stay relief and we'll get the money. It doesn't work that way. You're suggesting they're not going to approve a rate increase simply to pay off a debt that's about to be discharged in bankruptcy. A substantial part of it, yes. But also, counsel, I just want to really clarify this. You're saying that whatever they were asking for in the latest lift-stay motion that's on appeal, they already got a ruling on the substantive issue in the summary judgment order, which came down before they filed the lift-stay motion. And to the extent anything was left, they got that ruling in the decision from Judge Swain in the adversary proceeding. Last week, right. Right, which was a couple months after they filed the lift-stay motion. Right. So there's nothing left to determine. Not that we know of. The bottom line on all this is that municipal bonds aren't quite as secure as the market may have thought. Your Honor, I think municipal bonds are going to change a lot after this case. They've changed already. Any more questions? Thank you. Thank you. Thank you, counsel. At this time, counsel, for the intervener, please introduce yourself on the record to begin. You have three minutes. May it please the Court. Pedro Jimenez of Paul Hastings LLP on behalf of the intervener, the Official Committee of Unsecured Creditors. Your Honor, I had some prepared remarks, but I do want to start with a question or questions that came up during argument earlier, and this relates to the significance of Judge Swain's prior order on the lien scope and their rights vis-à-vis the contractual receivership remedy. And I think it really touches on two points. The first point is she relied upon that ruling and effectively incorporated it into her ruling on the motion for stay relief that the appellants recently filed and said, effectively, based on that ruling, I found that you have no rights vis-à-vis the contractual receivership remedy. It doesn't create a secured claim. It doesn't create any other right that would give you the ability to come in under Section 362 and ask for stay relief. I think it's important to note that appellants during their argument referenced time and time again this idea of a textbook adequate protection that they're entitled to protect this receivership remedy. The problem in bankruptcy is that adequate protection is only available for a secured creditor, and Judge Swain already ruled the precise opposite, that they're not secured by the receivership remedy. So therefore, they have no ability to come in under 362 and ask for adequate protection to protect the remedy the court has already found does not create a secured claim. The second reason why I think the ruling is important here is that it goes to their standing to come in and rely upon Section 362E to ask for stay relief. 362E and the legislative history to that section make clear that the 30-day requirement that we've been talking about is only available to secured creditors. Judge Swain has already found that they're not secured by virtue of the contractual receivership remedy, and therefore, it is our position that they had no basis to rely on 362E for stay relief. And in fact, Judge Catt, as you mentioned, in our view, the 30-day block never starts because they have to demonstrate that they have standing under Section 362E to get the benefit of the 30 days, and Judge Swain had already previously found that they do not. Therefore, the idea of having this mythical hearing is just nonsense in this case because— I'm sorry, when you say already previously found, do you mean the recent finding at the adversarial proceeding, or was there some other preliminary finding before that that you're referencing? Let me be more precise, Judge Thompson. The March 2023 ruling on the lien scope issues that the appellants had raised, Judge Swain, that decision found that the contractual receivership remedy does not create secured claim. That's the summary judgment ruling, right? That is the summary judgment ruling, correct, Judge Rickleman. And therefore, the idea that they somehow have the ability to come in under 362E and ask for relief and be entitled to rely on the 30-day clock simply just doesn't apply. I know I'm short on time, but I do want to reinforce the point, though, that we have the ability to raise the issue of standing at this court. They have made points in their briefs that somehow we're only asking for this court to basically green-light us and that the stay was automatically terminated by virtue of the hearing not having taken place in 30 days. As Mr. Bienstock correctly pointed out, GROLA, which is a decision from this circuit, says the complete opposite. Both the Oversight Board and the Committee are well within their right to raise issues related to appellants standing to even rely on Section 362E in the first place. And we believe that based on Judge Schoen's prior ruling from March 2023, they have no standing under 362E. Thank you. Thank you. Thank you, counsel, at this time. If counsel for the appellants will please reintroduce himself on the record. He has a three-minute rebuttal. Before you start, the appellees mentioned a case that they said was not mentioned in the briefs. Please send us that citation in a 28-J letter. And there was also a reference to some portion of the transcript or the appendix at 555 should be 55. Please file an errata of that. We will, Your Honor. Sorry to interrupt. Go ahead. No problem, Your Honor. Thomas Lauria with White Case for Appellant Golden Tree Asset Management. There are six points that I'd like to try to raise in my rebuttal. Number one, counsel for the board clearly stated that creditor rights and remedies are preempted by PROMESA and more broadly by the Bankruptcy Code. This is clearly demonstrably false. Why is that? Well, if they were preempted, then why would they be stayed? Congress decided not to preempt and eliminate creditor rights. Congress decided to stay them and provide a mechanic for getting relief from that stay. So the notion that creditor rights are preempted is just, I don't know what, 200 years. That counsel has been practicing bankruptcy law. I've only been practicing for 37. But creditor rights continue to exist. In fact, the Supreme Court, U.S. v. Butner, specifically said that property rights in bankruptcy cases start with applicable non-bankruptcy law and the code layers on top. I think the argument is that all creditors have rights to enforce their debt. But merely the fact that you have a right to enforce your debt doesn't give you priority over other unsecured debtors. I think that at base is what is being said. Well, the issue that would have gotten litigated here is that we believe the receivership right under Section 17 of the Authority Act gives the revenue bonds of PREPA a unique right. In fact, we've searched high and low for any corollary or similar provision in another state or situation where something like this could have already been addressed, and we found none. What we have found, though, is Section 510 of the Bankruptcy Code, which is applicable in a PROMESA proceeding, provides for the post-petition enforcement of subordination rights in a bankruptcy case. And I think it's almost de rigueur to say that it's a regular matter where senior creditors enforce subordination against junior creditors, and junior creditors are often forced to submit to that subordination. Sometimes there's litigation about that. Sometimes that litigation is in the bankruptcy court. Sometimes it's in another court. But there's no power or automatic effect of a bankruptcy case to eliminate subordination rights. Those rights have to be decided by a court. Let me bring you back to the statute where we were focusing on earlier. If you had had the hearing that you want us to rule should have occurred within 30 days, would a pivotal issue at that hearing have been whether there was any property of the debtor that was at issue? Apparently so. Your Honor, we believe that the right to go to non-bankruptcy court, to seek a receiver to take possession of the debtor's property, is closely analogous to foreclosure in a state that requires judicial foreclosure. The secured creditor gets the stay lifted to bring an action in state court to foreclose. It's very analogous to what this law gives us here. And those rights are not abrogated. Just as another example of how creditor rights are not abrogated in bankruptcy, if the debtor decides they don't want to pay their secured creditor, they can't just say, hey, all the laws that provide for the perfection of a secured interest have been abrogated by the bankruptcy code. Well, so if the proposed act that the debtor who's filing a 362e1 request is seeking relief to undertake, if that proposed act is not against property of the debtor, then does the debtor have a 362e1 request right to make? Well, that's disputed. We have alleged in our papers that the remedy we seek is a remedy against property of the debtor, and we believe it is. Well, suppose the court ruled that it wasn't, that there was no, that the act that you're proposing to take was not against property of the debtor. Would that mean you would lose, perhaps wrongly or otherwise, what would that mean you would lose the 362e1 request? The court would have to decide that at a hearing where we would put in evidence and we'd make argument. We were deprived of that opportunity. Can you win such a request if it turns out that the property against which you're proposing to act is not property of the debtor? Well, I don't think there's any dispute that the revenues that we seek to get control of here are property of the debtor. But that's not my question. My question is can you win a 362e1 request if the property against which you are proposing to act is not property of the debtor? The court, I believe, would determine that we're not entitled to relief from the state. It would determine the cause for state relief doesn't exist. So you can't win if it's not property of the debtor? Well, Your Honor, I'm not going to concede that point. I guess I want to think about it and see if there are other bases for relief. But 362e contemplates a remedy against property of the debtor. Well, you see the significance of it because their argument is that you have, in fact, had a hearing already leading to a determination that this pivotal issue that would be in a 362e1 has already been resolved and is binding on you. So, therefore, no 362e1. It hasn't been resolved, Your Honor. It has not been resolved. Our motion does not assert. This is a fantasy motion that PREPA would like to argue against. Our motion does not assert a lien on the right to a receivership, not even close. Our motion says that we're entitled to a remedy to enforce our claim, which involves getting possession of the debtor's revenues. That's what our motion says. And I would grab it and read it to the court, but I don't think we all have the time. But that's what it says. We do not argue. We read carefully the court's summary judgment ruling, and we made sure that we were not running afoul of that ruling before we followed our lift-today motion. Indeed, we took reference to that ruling in filing our motion for relief from this day. But, again, the judge disagreed with you, and you're saying you needed to have a hearing for her to disagree with you? I think that's how it works, Your Honor. I think that's how it works. We get our day in court. I wanted to just mention another point. There was some suggestion – actually, three or four other points, and I'd just like to very quickly – I'll give you another minute. Okay. Thank you, Your Honor. Section 102 may not necessitate a hearing if there are no facts in dispute. But I don't know how you find out that there are no facts in dispute until someone joins issue. An advocate needs to join issue and say there's something in dispute here, and the court can then determine there are no facts in dispute and maybe then can say we don't need a hearing. But here, there was no joiner. But, counsel, doesn't it say – and I'm just looking at the language – it says that the court can determine such opportunity for a hearing as is appropriate in the particular circumstances. So it's for the court to determine that, right? Yes, Your Honor. So if the court has determined that the motion is raising duplicative issues, why is it still required to hold a hearing, given that language, given that very specific language? That language has been applied when there's an exigency, when there isn't time. There's some emergency that necessitates action without a lot of notice. I'm not sure I know of any precedent for the idea that notice in a hearing can be completely dispensed with. I want to just be clear again. We don't believe there's any overlap between the relief we saw in our lift-stay motion and any of the relief that's been granted in the adversary. The fact that there's no case dealing with our rights is a product of the fact that this is an extraordinary statute that was used to induce $8 billion of investment in Puerto Rico to build and maintain and enhance its power system. I think the court got it exactly right, that there should have been a hearing to determine whether or not we were entitled to relief. And the fact that we didn't get that is the problem. I think I've given you two now. So let's wrap it up. Okay. Your Honor, let me just say that in response to the arguments made by the committee that adequate protection is only available to a secured creditor, there's no case law that says that. In fact, adequate protection is of an interest in property. And there are parties, for example, parties to franchise agreements and other types of agreements who have, in fact, gotten relief under 362D for lack of adequate protection. So this idea that it's limited to somebody who has a secured claim is just not the law. Thank you. Thank you. Thank you, counsel. That concludes argument in this case. All rise.